NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241281-U

NO. 4-24-1281

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 28, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* C.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
|     Petitioner-Appellee, | ) | No. 23JA84 |
|     v. | ) | |
| Jeremy S., | ) | |
|         Respondent-Appellant). | ) | Honorable |
| | ) | Erin B. Buhl, |
| | ) | Judge Presiding. |

        JUSTICE LANNERD delivered the judgment of the court.
        Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed, concluding no issue of arguable merit could be raised on appeal.

¶ 2    In June 2024, the State filed a petition to terminate the parental rights of respondent, Jeremy S., to his minor child, C.S. (born January 2023). Following the fitness and best interest hearings, the trial court granted the State's petition and terminated respondent's parental rights. The court also terminated the parental rights of C.S.'s mother, Jamie F., who is not a party to this appeal.

¶ 3    Respondent timely appealed, and this court appointed counsel to represent respondent. Counsel has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), contending "he cannot in good faith make a non-frivolous argument for reversal." We grant the motion to withdraw and affirm the trial court's judgment.

¶ 4                                I. BACKGROUND

¶ 5        On March 15, 2023, the State filed a petition for adjudication of wardship, alleging C.S. was a neglected minor pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3 (West 2022)). The petition alleged (1) C.S. was born with amphetamines in his "urine, blood, or meconium," (2) Jamie F. had a substance abuse issue which prevented her from properly parenting, and (3) Jamie F. "failed to cure the conditions that brought [C.S.'s] siblings into care." Although the caseworker spoke to respondent and informed him of the shelter care hearing, he did not appear. At that hearing, Jamie F. waived her right to a shelter care hearing. The trial court accepted Jamie F.'s admission, entered a default judgment against respondent, found there was probable cause for the petition, and granted temporary custody and guardianship of C.S. to the Illinois Department of Children and Family Services (DCFS). The case was then set for an adjudicatory hearing on June 14, 2023.

¶ 6        A summons for the adjudicatory hearing was issued to respondent but returned as undeliverable. The State then filed an affidavit for service by publication on March 20, 2023. Notice of the adjudicatory hearing was published in the Auburn Citizen on March 22. Respondent failed to appear at the adjudicatory hearing held in June 2023. At that hearing, Jamie F. stipulated to count I in the State's petition and waived her right to a hearing. Jamie F. further stipulated she was unfit or unable but not unwilling to care for C.S. and guardianship and custody should be granted to DCFS. The trial court accepted Jamie F.'s stipulation, found C.S. was a neglected minor, as alleged in count I of the petition, and found Jamie F. was unfit or unable but not unwilling to care for C.S. In addition, the court found respondent was unfit, unwilling, or unable to care for C.S. Custody and guardianship of C.S. was granted to DCFS.

¶ 7        In June 2024, the State filed a three-count petition to terminate respondent's

parental rights, alleging:

"COUNT 1: [Respondent] has failed to maintain a reasonable degree of interest, concern or responsibility as to [C.S.]'s welfare. 750 ILCS 50/1(D)(b).

COUNT 2: [Respondent] has failed to make reasonable efforts to correct the conditions that caused [C.S.] to be removed during a nine (9) month period after an adjudication of neglected or abused minor under Section 2-3 of the [Juvenile Court Act] or dependent minor under Section 2-4 of that Act. 750 ILCS 50/1(D)(m)(ii) 06/23/2023 to 03/23/2024 and/or 09/10/2023 to 06/10/2024[.]

COUNT 3: [Respondent] has failed to make reasonable progress toward the return of [C.S.] to him during a nine (9) months [*sic*] period after an adjudication of neglected or abused minor under Section 2-3 of the [Juvenile Court Act] or dependent minor under Section 2-4 of that Act. 750 ILCS 50/1(D)(m)(ii) 06/23/2023 to 03/23/2024 and/or 09/10/2023 to 06/10/2024[.]"

The trial court set the case for a hearing on the State's petition. The fitness portion of the hearing occurred on August 19, 2024, and the best interest portion occurred on September 17, 2024. We note the court conducted a combined termination hearing on the termination of respondent's parental rights to C.S. and Jamie F.'s parental rights to C.S. and another minor child, B.L. Because the facts regarding B.L. are not relevant to this appeal, we only include those facts related to the termination of respondent's rights to C.S.

¶ 8                          A. Fitness Hearing

¶ 9            Before the fitness hearing began, respondent's counsel requested a continuance because respondent was not present. Counsel admitted he did not have any knowledge of respondent's whereabouts. The trial court denied the request and proceeded with the hearing.

¶ 10        Prior to calling its first witness, the State requested the trial court take judicial notice of the following: the neglect petition filed on March 15, 2023; the temporary custody order entered on March 16, 2023; the adjudicatory and dispositional orders entered on June 14, 2023; permanency review orders entered on January 8, 2024, and June 10, 2024; and the motion for termination of parental rights filed on July 17, 2024. The State then offered the DCFS indicated report and seven service plans into evidence. The court admitted these exhibits pursuant to an agreement by the parties. Following admission of the exhibits, the State presented testimony from Mercedes Sanchez.

¶ 11                         1. *Testimony of Mercedes Sanchez*

¶ 12                         a. Direct Examination

¶ 13        Mercedes Sanchez, a caseworker for Brightpoint, was the caseworker assigned to respondent's case in February 2024. However, Sanchez noted the case was assigned to Brightpoint in September 2020, when B.L., C.S.'s sibling, came into care. In October 2023, the prior caseworker met with respondent and informed him of the need to complete services. Despite this admonition, respondent never completed an integrated assessment or engaged in services. According to Sanchez, the agency made several attempts, via phone calls and text messages, to contact respondent throughout the pendency of the case. The last time the agency had contact with respondent was sometime in 2023. Additionally, respondent only visited C.S. on one or two occasions in 2023.

¶ 14                         b. Cross-Examination

¶ 15        On cross-examination by respondent's counsel, Sanchez stated she never had any contact with respondent during her time as the caseworker.

¶ 16                         2. *Trial Court's Ruling*

¶ 17        Following arguments from the parties, the trial court took the matter under advisement. Before the hearing concluded, respondent's counsel requested he be given leave to file a motion to reopen proofs if respondent appeared at the next hearing date. The court indicated it would consider the request if it was made at the next hearing.

¶ 18        On September 17, 2024, the trial court issued its oral ruling with respect to respondent's unfitness. The court found the State had proven counts I through III in its petition by clear and convincing evidence. In its ruling, the court highlighted respondent's failure to complete an integrated assessment or complete services. Moreover, respondent failed to maintain contact with the agency, despite repeated efforts by the agency to contact respondent. The court concluded by stating, "It appears [respondent] has no interest in parenting. He has failed to maintain any degree of interest, concern, or responsibility and has shown no efforts or progress throughout the entirety of this proceeding."

¶ 19                           B. Best Interest Hearing

¶ 20        After providing its oral ruling as to parental fitness, the trial court immediately proceeded to a best interest hearing. Prior to the start of the hearing, respondent's counsel requested a continuance because respondent was not present. The court denied this request, noting, "[Respondent] has chosen not to attend court for quite a period of time now." The State then asked the court to take judicial notice of all the evidence presented at the fitness hearing and the caseworker's report filed on September 9, 2024. Following that request, the State presented testimony from Sanchez.

¶ 21                        1. *Testimony of Mercedes Sanchez*

¶ 22        According to Sanchez, C.S. was placed with his maternal aunt and uncle in March 2024. The foster parents include C.S. in their family activities and C.S. shows "a bond and

attachment" with them. C.S. has no relationship with respondent and does not know who he is. The foster parents have expressed a willingness to adopt C.S. and his older sibling, B.L. In Sanchez's opinion, it is in C.S.'s best interest for respondent's rights to be terminated.

¶ 23                                     2. *Trial Court's Ruling*

¶ 24          Following arguments from the parties, the trial court found it was in C.S.'s best interest for respondent's parental rights to be terminated. The court emphasized C.S.'s need for stability and his strong connection with his foster parents. In addition, the court noted respondent had failed to be involved in services and had "actively chosen not to appear" in court. Accordingly, the court terminated respondent's parental rights.

¶ 25          This appeal followed.

¶ 26                                     II. ANALYSIS

¶ 27          On appeal, respondent's counsel moves to withdraw, contending "he cannot in good faith make a non-frivolous argument for reversal." In support of his motion to withdraw, counsel submitted a memorandum of law providing a statement of facts and argument as to why respondent's claims lack merit. Counsel provided proof of service of his motion and memorandum on respondent, and this court granted respondent the opportunity to file a response. Respondent failed to file a response. After examining the record and counsel's motion to withdraw, we find respondent's appeal presents no potentially meritorious issues for review and, accordingly, we grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 28                    A. Trial Court's Finding of Parental Unfitness

¶ 29          Under the Juvenile Court Act, there is a two-stage process for the involuntary termination of parental rights. The first stage, commonly referred to as a fitness hearing, "focus[es] *** on the parent's conduct relative to the ground or grounds of unfitness alleged by the State."

- 6 -

*In re D.T.*, 212 Ill. 2d 347, 364 (2004). The burden is on the State to "demonstrate by clear and convincing evidence that the parent is 'unfit' under one or more of the grounds set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2004))." *In re Veronica J.*, 371 Ill. App. 3d 822, 828 (2007). On review, this court affords great deference to the trial court's finding of parental unfitness and will not disturb that finding unless it is against the manifest weight of the evidence. *In re H.D.*, 343 Ill. App. 3d 483, 493 (2003). "A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 30　　　　　In this case, the trial court found respondent unfit on multiple grounds; however, it is well-settled "[a] trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds." *In re M.C.*, 2018 IL App (4th) 180144, ¶ 31. A review of the record establishes the court's finding respondent was an unfit parent was not against the manifest weight of the evidence. Sanchez testified respondent never engaged in services and only visited with C.S. once or twice. Despite repeated attempts by the agency to get in contact with respondent, respondent failed to maintain contact with the agency throughout the pendency of the case. This evidence was sufficient to prove count I of the State's petition: respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to C.S.'s welfare. Consequently, the court's determination respondent was an unfit parent was not against the manifest weight of the evidence.

¶ 31　　　　　　　　B. Trial Court's Best Interest Finding

¶ 32　　　　　Following a trial court's determination a parent is unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *D.T.*, 212 Ill. 2d at 352. At this second stage, commonly referred to as the best interest hearing, "the State bears the

burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest." *In re J.B.*, 2019 IL App (4th) 190537, ¶ 31. When determining if the State has met its burden, the court should consider the following statutory factors:

> " '(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least[-]disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child.' " *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 52 (quoting *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006), and citing 705 ILCS 405/1-3(4.05) (West 2014)).

¶ 33        As with a review of a court's finding of unfitness, "[a] reviewing court [also] affords great deference to a trial court's best-interest finding because the trial court is in a superior position to view the witnesses and judge their credibility." *J.B.*, 2019 IL App (4th) 190537, ¶ 33. "A trial court's finding that termination of parental rights is in a child's best interests will not be reversed on appeal unless it is against the manifest weight of the evidence." *M.C.*, 2018 IL App (4th) 180144, ¶ 35. "A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent." *Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 34        In this case, Sanchez testified C.S. had no relationship with respondent and did not know who respondent was. Additionally, throughout the pendency of the case, respondent only

visited with C.S. once or twice. Meanwhile, the foster parents provided care for C.S. since March 2024, and C.S. showed a bond and attachment with them. The foster parents also expressed a willingness to adopt C.S. Based on this evidence, the trial court's decision it was in C.S.'s best interest for respondent's parental rights to be terminated was not against the manifest weight of the evidence.

¶ 35                                    III. CONCLUSION

¶ 36        For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 37        Affirmed.